## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

In Re:                                          :          Case No.: 09-51891 (ahws)
                                                :
Action Motors Corporation                       :          Chapter 11
                                                :
        Debtor                                  :          January 28, 2010


## *PLAN OF REORGANIZATION*


**SUBMITTED BY:**
*James M. Nugent, Attorney for*
*ACTION MOTORS CORPORATION, DEBTOR*


1

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: | : | Case No.: 09-51891 (ahws) |
| | : | |
| Action Motors Corporation | : | Chapter 11 |
| | : | |
| Debtor | : | January ___, 2010 |

### PLAN OF REORGANIZATION

Action Motors Corporation, as debtor and debtor-in-possession (the "Debtor"),
hereby proposes this Plan of Reorganization ("Plan") pursuant to the provisions of
Chapter 11 of the United States Bankruptcy Code, 11 U.S.A. §§ 101 et. seq.

### ARTICLE I

### DEFINITIONS

As used in this Plan, and unless expressly provided otherwise herein, the
following capitalized terms will have the respective meanings set forth below (such
meanings to be equally applicable to the singular and plural forms of the terms defined
and to masculine, feminine and neuter genders). Capitalized terms used herein, but
not defined below, shall have the meanings ascribed to them in the Bankruptcy Code,
the Bankruptcy Rules or the Exhibits to this Plan.

1.1 **"Administrative Claim"** shall mean any cost or expense of administration in
connection with the Reorganization Case entitled to priority in accordance with
provisions of sections 503(b) and 507(a)(1) and (2) of the Bankruptcy Code, including,
without limitation, (a) any actual, necessary costs and expenses of preserving the
Estate and of operating the business of the Debtor (other than such Claims or portions

2

thereof which, by their express terms, are not due or payable on or before the Effective

Date); (b) all allowances of compensation for legal or other professional services or

reimbursement of costs and expenses under section 330 or section 503 of the

Bankruptcy Code or as otherwise allowed by the Bankruptcy Court; and © any fees or

charges assessed against the Estate under section 1930 of title 28, United States

Code.

     1.2 **"Allowed"** shall mean (a) with respect to a Claim: (I) any Claim which has

been scheduled by the Debtor as liquidated and not disputed or contingent, or proof of

which was filed with the Bankruptcy Court on or before the date designated by the

Bankruptcy Court as the last date for filing such proof of claim, and in either case, as to

which Claim no objection to the allowance thereof has been interposed within the

period of limitation fixed by the Bankruptcy Rules or the Bankruptcy Court; or (ii) a

Claim that has been allowed (and only to the extent allowed) by Final Order; and (b)

with respect to an interest, every allowed Interest.

     1.3 **"Anniversary Date"** shall mean each succeeding date that is one calendar

year first after the Effective Date, and thereafter, after the immediate prior Anniversary

Date.

     1.4 **"Bankruptcy Code"** shall mean Title 11 of the United States Code, 11

U.S.A. §§ 101 et seq., as now in effect or hereafter amended or supplemented.

     1.5 **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the

District of Connecticut, having jurisdiction over Debtor's Chapter 11 Case.

     1.6 **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy

2

Procedure and the Local Rules of the Bankruptcy Court, as now in effect or hereafter amended or supplemented.

1.7 **"Business Day"** shall mean any day other than a Saturday, Sunday or other day entitled "legal holiday" as that term is defined in Bankruptcy Rules.

1.8 **"Cash"** shall mean legal tender of the United States of America.

1.9 **"Claim"** shall mean a "claim" as defined in section 101(5) of the Bankruptcy Code, against the Debtor, or portion of such Claim.

1.10 **"Claimant"** means the holder of a Claim.

1.11 **"Cash Collateral Orders"** means any order entered by the Bankruptcy Court in this case pursuant to Bankruptcy Code § 363.

1.12 **"Class"** shall mean a category or group of holders of Claims or Interests, as classified and described in Article IV of this Plan.

1.13 **"Confirmation"** shall mean entry of the Confirmation Order.

1.14 **"Confirmation Date"** shall mean the date on which the Bankruptcy Court enters the Confirmation Order.

1.15 **Confirmation Order"** shall mean the order of the Bankruptcy Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

1.16 **"Creditor"** shall mean a "creditor", as defined in § 101(1) of the Bankruptcy Code, of the Debtor.

1.17 **"Debtor"** shall mean **Action Motors Corporation**, debtor and debtor-in-possession in the Reorganization Case.

1.18 **"Disputed Claim"** shall mean a Claim (a) which is scheduled by the

3

Debtor as disputed, contingent or unliquidated, or (b) as to which an objection to the allowance thereof was interposed within the period of limitation fixed by the Bankruptcy Rules or the Bankruptcy Court for filing of such objection and, as to which such objection has not been determined by Final Order.

1.19 **"Disclosure Statement"** means the document filed or to be filed pursuant to § 1125 of the Bankruptcy Code and approved by the Bankruptcy Court as containing 'adequate information' as that term is defined by § 1125(a)(1) of the Bankruptcy Code, and any exhibits annexed hereto and any documents delivered in connection therewith, as the same may be amended from time to time by any duly authorized amendment or modification, all of which are hereby incorporated into and made a part of this Plan as if set out herein verbatim.

1.20 **"Distribution Date"** shall mean each annual date on which distributions of Cash are made to the holders of certain Allowed Claims in accordance with this Plan. The Effective Date shall be the first Distribution Date.

1.21 **"Effective Date"** shall mean the date on which the Plan shall be subsequently consummated in accordance with the applicable provisions of this Plan, which date, unless Debtor elects to be an earlier date, shall be the first Business Day following the date on which the Confirmation Order becomes a Final Order or as promptly as practicable thereafter.

1.22 **"Estate"** shall mean the estate created in the Reorganization Case pursuant to § 541 (a) of the Bankruptcy Code.

1.23 **"Executory Contract"** shall mean every contract and license to which the

4

Debtor is a party which contract, license or lease is subject to assumption or rejection under § 365 of the Bankruptcy Code.

1.24 **"Filing Date"** shall mean **September 23, 2009** the date of commencement of the Reorganization Case.

1.25 **"Final Order"** shall mean an order or judgment, the operation or effect of which, in whole or part, has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification or amendment thereto) (a) the time to appeal or seek review or rehearing has expired and (b) as to which no appeal or petition for review or rehearing that was timely filed, is pending.

1.26 **"General Unsecured Claim"** shall mean any unsecured Claim that is not entitled to priority under the Bankruptcy Code.

1.27 **"Insider"** shall mean as set forth in the Bankruptcy Code.

1.28 **"Interest"** shall mean any equity interest in the Debtor.

1.29 **"Operating Account"** shall mean the account maintained by the Debtor on and after the Effective Date for purposes of depositing all receipts generated from the operation of the Debtor's business.

1.30 **"Other Secured Claim"** shall mean any Claim of a Creditor secured by a valid and duly perfected, non-voidable lien upon or security interest in property of the Estate to the extent of the value, as of the Confirmation Date, of such Creditor's interest in the Estate's interest in such property, as determined by the Bankruptcy Court pursuant to §506 of the Bankruptcy Code or as agreed upon in writing between the Debtor and the holder of such Claim;

5

1.31 **"Person"** shall mean a "person" as defined in § 101(41) of the Bankruptcy Code.

1.32 **"Plan"** shall mean this Plan of Reorganization, as it may be further amended or modified from time to time in accordance with the provisions hereof and of the Bankruptcy Code.

1.33 **"Professional Fees"** shall mean any Claim of a professional retained by order of the Bankruptcy Court in the Reorganization Case, pursuant to §§ 327 and 1103 of the Bankruptcy Code, and to be paid from the Estate for compensation or reimbursement of costs and expenses relating to services incurred prior to and through the Confirmation Date as, when and to the extent approved by Final Order pursuant to § 330, 331 or 503(b) of the Bankruptcy Code.

1.34 **"Reorganization Case"** shall mean the Chapter 11 case of the Debtor pending in the Bankruptcy Court and bearing case number 09-51891.

1.35 **"Action Motors Corporation"** shall mean Debtor.

1.36 **"Tax Claim"** shall mean any Claim, secured or unsecured, of a governmental taxing authority, including a Claim entitled to priority pursuant to § 507(a)(7) of the Bankruptcy Code.

1.37 **"Post Petition Trade Claims"** means Administrative Claims incurred post-petition in the ordinary course of business of the Debtor and on ordinary course business terms unrelated to the administration of the bankruptcy estate (such as trade and vendor claims).

6

## ARTICLE II

### PROVISIONS FOR PAYMENT OF UNCLASSIFIED CLAIMS

Section 2.1 **Payment of Administrative and Priority Claims.** Each holder of

an Allowed Administrative Priority Claim  shall be paid, in full settlement, release and

discharge of such Allowed Administrative Priority Claim:  (a) in full in Cash on the later

of the Effective Date, the date on which an order allowing such Administrative  Priority

Claim becomes a Final Order, and the date on which such Administrative  Priority Claim

becomes due and payable in the ordinary course of the Debtor's business; or (b)

pursuant to such other terms as may be agreed upon between the Debtor and the

holder of such Allowed Administrative  Priority Claim.

Section 2.2 **Payment of Priority Unsecured Claims.** The holders of allowed

priority claims under 11 U.S.C. §§507 (a)(8) shall be paid within 5 years of the date of

the entry of the order for relief plus interest pursuant to 28 U.S.C. §1961 (a) in effect on

the effective date of the Plan.  Such payments shall be made on a monthly basis

commencing 30 days from the effective date.  Payment of the priority claim shall not

including any penalty portion which shall be included in the class of general unsecured

claims and paid and/or discharged accordingly.  Taxing authorities shall apply the

Debtor's payments first to the trust fund portion of the claim until paid in full and only

then shall payments be applied to the nontrust fund portion.

### ARTICLE III

### CLASSIFICATION OF CLAIMS AND INTERESTS

For purposes of the Plan, Claims and Interests are classified as hereafter stated.

7

Section 3.1 **Class 1 Claims.** Class 1 shall consist of the secured claim of Chrysler Financial Services Americas LLC ("CFSA") .

Section 3.2 **Class 2 Claims.** Class 2 shall consist of the secured claim of the General Electric Capital Corp .("GECC")**.**

Section 3.3 **Class 3 Claims.** Class 3 shall consist of the secured claim of the Conn. Department of Labor **("DOL") .**

Section 3.4 **Class 4 Claims.** Class 4 shall consist of the allowed claims of general unsecured creditors.

 **Class 5 Claims**. Class 5 shall    consists of the allowed interest of Michael Bernstein.

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Holders of Allowed Claims and Allowed Interests shall receive, in full settlement, release and discharge and satisfaction of their respective Allowed Claims and Allowed Interests, the treatment hereinafter specified under the Plan:

**§4.1 Class 1-Secured Claim -** CFSA. This claim is disputed.  CFSA was previously paid, during regular business operations, its entire claim for  principal and interest on its loan.  Any allowed secured claim for CFSA will be paid from cash which it continues to hold , at least, in the amount of $52,000.00 and from future installment payments made by the promissory Notes it holds as additional collateral.


If and to the extent that CFSA continues to hold a claim in this case, which the

8

Debtor  disputes, it is impaired and this creditor would then be able to vote on the Plan.
If however, the claim is disallowed or expunged , then CFSA will not be permitted to
vote .  If and to the extent that CFSA is granted an allowed claim then it will retain its
lien up to that amount only and shall release from its lien all other collateral it may hold.
CFSA shall not be permitted to hold, retain or claim any collateral under its lien in
excess of the dollar amount of any remaining claim it alleges is now owed.

§4.2  **Class 2-** GECC   .   GECC remains secured by its lien on the Debtor's
collateral .    It will be paid the invoice amount due from the sale of the remaining horse
trailers plus accrued interest pursuant to the parties note until paid in full.    GECC will
retain its lien until paid in full.  It is impaired and may vote on the Plan.

§4.3 **Class 3-** The DOL has filed liens on the debtors assets.    It will be paid the
tax and interest owed as of the petition date, less all adequate protection payments
made during the chap. 11 case,  in full in quarterly installments plus interest pursuant to
28 USC § 1961(a). Any penalty portion will be subordinated to the unsecured creditor
class and paid accordingly.    The IRS is impaired and may vote on the Plan.

§4.4 **Class 4-   General Unsecured Creditors.**

Each holder of an Allowed Class 5 claim shall receive payments of a value, as of
the effective date of the plan, which are not less than what the holder would receive if
the debtor's estate were liquidated under Chapter 7.  The liquidation value of the
Debtor's assets is approx. $ 575,000 - 675,000.00 , depending on collectibility and

9

offsets claimed .    The Debtor will accumulate all assets available in the estate and,

after payment of secured, administrative and priority claims, and after expenses of

administration of the Plan, will pay Class 5 creditors with allowed claims, a pro rata

share of the remaining funds . Payments will be made on a semi-annual basis. The

estate assets to be distributed include note payments due and owing over the next 4

and one-half years and thus all such funds are not immediately collectible. Class 5

creditors are impaired and may vote on the Plan.

**§4.5  Allowed Interests.**  Michael Bernstein owns the entire equity interest in
the Debtor.   He will retain his interest which is valueless.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 5.1 **Implementation as of the Confirmation Date.** As of the

Confirmation Date, the following shall occur, or be deemed to have occurred,

simultaneously in addition to any applicable provision of the code:

(a) All persons shall be permanently restrained and enjoined (I) from

commencing or continuing in any manner, any action or other proceeding of any kind

with respect to any Claim or Interest, against the Debtor, its Estate, or property, (ii) from

enforcing, attaching, collecting or recovering by any manner or means, any judgment,

award, decree or order against the Debtor, its Estate or property, (iii) from creating,

perfecting or enforcing any encumbrance of any kind against the Debtor, its Estate or

property, except those liens expressly granted or retained herein, (iv) from asserting

any set-off, right of subrogation or recoupment of any kind against any obligation due

10

the Debtor, or property of the Debtor and (v) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; but in no way does the foregoing impair the right of a Creditor as provided for in Bankruptcy Code § 553.

Section 5.2 **Implementation on the Effective Date.** As of the Effective Date, the following shall occur, or be deemed to have occurred, simultaneously:

(a) All payments to be made under the Plan on the Effective Date by the Debtor, including certain distributions to be made to the holders of Allowed Claims and payment of Expenses of Administration shall be made from funds on the Confirmation Date which, prior to the Confirmation Date, were certified by Debtor as being in Cash and/or available to the Debtor, if any.

(b) Pursuant to the provisions of § 1141 (d) of the Bankruptcy Code, all debts of and interests in the Debtor that arose prior to the Confirmation Date including, without limitation, all Claims and Interests provided for under the Plan, and any debt of the Debtor of a kind specified in Sections 502(g), 502(h) or 501(l) of the Bankruptcy Code, shall be discharged, terminated or cancelled, as the case may be, except as otherwise provided for in this Plan.

© The Debtor shall continue to own, operate and manage the business consistent with and in accordance with the terms of this Plan.

(d) All claims for relief, including, but not limited to, avoidance or recovery actions under §§ 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or causes of action that the Debtor has or may have as of the Effective Date, shall be preserved for the debtor.

11

## ARTICLE VI

## DISTRIBUTION UNDER THE PLAN

Section 6.1 **General.** Distributions of Cash to be made pursuant to this Plan in respect of Allowed Claims shall be made on and after the Effective Date and upon the Succeeding Distribution Dates or Anniversary Dates, respectively, or as otherwise provided for herein, or as may be ordered by the Bankruptcy Court. Holders of Disputed Claims or Interests shall receive only that payment or distribution of Cash under the Plan as relates the amount of the Claim that is not disputed, with the balance of the Claim amount distribution to await Allowance of the Claim pursuant to Final Order; whereupon such balance payment, with interest, if any, on the unpaid balance of the Allowed Claim amount, from the Effective Date, shall be made promptly pursuant to and in accordance with this Plan.

Section 6.2 **Funding of Plan and Feasibility of the Plan.** All payments to be made on the Effective Date shall be made from the Debtor's account  funded by Cash generated from the Debtor's continued operations, if any, income and management. Funding for continued plan payments will be made from  income received from the collection of Estate assets including: note receivables owed by    Danbury Fair Dodge LLC ; money owed by General Motors ("GM")for the termination of the Debtor's franchise; other factory credits, warranty payments or open account items owed  by GM or Chrysler Motors Corp ("CMC") ; and all other receivables owed to the Debtor.    The Debtor  will be able to perform its obligations under the plan based on its ability to collect the estate assets described in this section which it expects to substantially

12

collect.

## ARTICLE VII

## PROVISIONS FOR RESOLVING DISPUTED AND CONTINGENT CLAIMS

Section 7.1 **Objection Bar Date.** All objections to Claims shall be served and

filed within eight (8) months after the Confirmation Date or such later date as the

Bankruptcy Court shall fix in the Confirmation Order except that objections to

applications for Administrative Claims shall be filed within ten (10) days after notice of

the date of hearing of Applications for such Administrative Claims.

Section 7.2 **Resolution of Disputed Claims.** As and to the extent Disputed

Claims become Allowed Claims, the Debtor shall promptly distribute to the holders of

such Allowed Claims the balance of the amount of Cash that such holders would have

received had their Claims been Allowed Claims as of the Effective Date .

Section 7.3 **Status of Disputed Claim.** Unless and until a Disputed Claim

becomes an Allowed Claim no holder of such Claim shall have any Claim against the

Debtor in respect of such Claim.

## ARTICLE VIII

## DISCHARGE, SURRENDER , EXPUNGEMENT AND CANCELLATION OF CLAIM

Section  8.1  Except as otherwise provided in this Plan or in any order of the

Bankruptcy Court: (a) the rights afforded and the payments and distributions to be

made under this Plan shall be in complete exchange for, and in full and unconditional

settlement, satisfaction, discharge and release of, all existing debts and Claims of any

kind, nature or description whatsoever against the Debtor or any of its assets or

13

property and shall effect a full and complete  release and termination of all liens,
security interests or other Claims or encumbrances  upon  the Debtor's assets and
property; and (b) on the Effective Date all existing Claims against the Debtor shall be,
and shall be deemed to be, extinguished, satisfied, discharged and released in full and
all holders of Claims and interests shall be precluded from asserting against the Debtor
or its assets or property any other or further claims based upon any act or omission,
transaction or other activity of any kind or nature that occurred prior to the Confirmation
Date.

Section 8.2  Except  as other wise provided in this Plan or in the Confirmation
Order, the Confirmation Order shall be a judicial determination of the discharge of the
Debtor from any and all debts of the Debtor that arose before the Confirmation Date
and any liability on a Claim that is determined under §502 of the Bankruptcy Code as if
such Claim had arisen before the Confirmation Date, whether or not a proof of claim
based on any such debt or liability is filed under § 501 of the Bankruptcy Code and
whether or not a Claim based on such debt or liability is Allowed under § 502 of the
Bankruptcy Code.  The discharge of the Debtor shall be effective as to each Claim
regardless of whether the Claim is an Allowed Claim or whether the holder thereof
votes to accept the Plan.

8.3   Any and all claims which were listed as Disputed on the Debtor's schedules
and for which a proof of claim was never filed, shall be deemed to be expunged and
disallowed as a matter of law and any such claimant with a disputed claim shall be
permanently barred from receiving any distribution, shall not be allowed to vote on the
Plan and shall not have an enforceable claim against any person or entity for any such

14

disputed claim or any portion thereof.

## ARTICLE IX

## EXECUTORY CONTRACTS

Section 9.1 Any and all Executory Contracts which have not been either assumed or rejected under this Plan or by a Final Order prior to or on the Confirmation Date shall, on such date, be deemed assumed pursuant to § 365 of the Bankruptcy Code. On the Effective Date or as soon thereafter as practicable, the Debtor shall, in the ordinary course of business, cure all defaults under Executory Contracts assumed under the Plan, and the continuing operation of the Debtor pursuant to the Plan shall constitute adequate assurance of future performance with respect thereto.

## ARTICLE X

## CRAMDOWN OF NON-ACCEPTING CLASSES

Section 10.1 If an impaired class fails to accept the Plan by the requisite majorities in number and amount as required in § 1126 of the Bankruptcy Code, the "cramdown" provisions of § 1129(b) of the Bankruptcy Code will be invoked by the Debtor and the Debtor will move the Bankruptcy Court to enter the Confirmation Order notwithstanding any such non-acceptance.

Section 10.2 The Debtor reserves the right to modify, amend or supplement the Plan in order to invoke the cramdown provisions of § 1129(b) of the Bankruptcy Code with respect to impaired classes under this Plan.

## ARTICLE XI

## CONDITIONS TO CONFIRMATION AND EFFECTIVENESS

15

Section 11.1 **Conditions to Confirmation.** Confirmation of the Plan is subject to the following terms and conditions: none .

Section 11.2 **Conditions to Effectiveness.** Notwithstanding any other provision of the plan or the Confirmation Order, unless otherwise modified in writing by the Debtor, the consummation and effectiveness of the Plan are subject to the following terms and conditions:

(a)  the Confirmation Order shall become a Final Order.

## ARTICLE XII

## RETENTION OF JURISDICTION

Section 12.1 The Bankruptcy Court shall retain jurisdiction of the Reorganization Case for, inter alia, the following purposes:

(a)  to determine any and all objections to the allowance of Claims and Interests;

(b)  to determine any and all applications for compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

©  to remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan to the extent authorized by the Bankruptcy Code or the Bankruptcy Rules;

(d)  to determine any and all controversies and disputes arising under or related to the Plan;

(e)  to construe and enforce any and all provisions of the Plan;

16

(f)  to determine any and all pending applications for the rejection or assumption of Executory Contracts, and to hear and determine and, if need be, to liquidate, any and all Claims arising therefrom;

(g)  to determine any and all applications, adversary proceedings and contested or litigated matters commenced prior to the Confirmation Date;

(h)  to enter a final order or decree in the Reorganization Case; and

(I)  to determine such other matters as may be provided for in the Confirmation Order, consistent with the Plan of Reorganization and authorized under the provisions of the Bankruptcy Code and Bankruptcy Rules.

## ARTICLE XIII

## IMPLEMENTATION OF PLAN

Section 13.1  The Debtor is obligated to perform the Plan functions of making timely and complete payments under the Plan .  Debtor's means for effectuating this Plan shall be accomplished through management and the collection of all of its assets .

Section 13.2  The Debtor shall continue to conduct its business, if any ,  in the ordinary course of business and in a manner consistent with this Plan and all property of the Debtor's estate shall vest in the Debtor.   However, the Debtor expects that regular business operations will cease in the near future, all possible expenses will be eliminated and the estate assets will then be liquidated pursuant to the terms of this plan .

Section 13.3   James M.Nugent, Debtor's Counsel, is appointed Plan Administrator and shall have the following specific duties:  the collection of all estate assets and

17

their retention in approved depository ; a review of all claims for allowance,  the prosecution of objections as necessary; the payment off all allowed claims; overseeing the disposition of any unsaleable assets ; the completion of any attendant documentation in connection with the above duties and the closure of the case.   The plan administrator shall have no responsibility or obligation to sign tax returns, pension plan or 401(k) related documents or other elated documentation or tax related documents , which shall remain the responsibility of current officers and owners.

13.3.1 .    The plan administrator shall be compensated for his duties based on normal hourly rates as billed to other bankruptcy clients from time to time and as adjusted from year to year and for appropriate expenses .   Court approval is not required for such payments and the administrator shall  maintain appropriate time records and records of expenses as are ordinally required by the US Trustee's office.

13.3.2.    The plan administrator shall not be liable nor responsible for acts of ordinary negligence , errors or omissions committed in the course of his duties as described in this Plan; instead he shall be fully exculpated for all such acts, errors and omissions.   If and to the extent applicable, any costs or expenses the plan administrator incurs in connection for such acts, errors or omissions shall be reimbursable by the estate including but not limited to, attorney's fees, costs and expenses.   This exculpation shall not extend or apply to acts of gross negligence nor to any intentional acts of malfeasance.

## ARTICLE XIV

## COVENANTS AND WARRANTIES OF DEBTORS

18

Section 14.1        Insurance.    The Debtor will maintain such insurance coverage as is necessary or appropriate until the shut down off all operations at which time it shall be cancelled.

## ARTICLE XV

## GENERAL AND ADMINISTRATIVE PROVISIONS

Section 15.1 **Unclaimed Distributions.** Holders of Allowed Claims which do not timely submit  their distribution checks  for payment shall be deemed to have waived their right to such distributions and shall not participate in any distributions under the Plan pursuant to § 1143 of the Bankruptcy Code.  The proceeds of checks issued to the holders of such Claims shall be deemed unclaimed property pursuant to § 347 (b) of the Bankruptcy Code at the expiration of six months (6)  from the date the unpaid distribution check is mailed unless such holder requests payment from the Debtor in writing within said six (6) month  period.  The funds resulting from such unclaimed property shall revert to the Debtor and shall be used by the Debtor in its sole discretion.

Section 15.2 **Manner of Payments Under the Plan.** At the Debtor's option, any Cash distribution to be made pursuant to the Plan may be made by check or wire transfer, or as otherwise required by applicable agreements, if any.

Section 15.3 **Payment Dates.** Any payment or distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

Section 15.4  **Withholding and Reporting Requirements.** In connection with

19

this Plan and the distributions made hereunder, the Debtor shall comply with all withholding and reporting requirements imposed by any federal, state and local taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

Section 15.5 **Notices.** All notices, requests, elections or demands for payments provided for in this Plan shall be in writing and shall be deemed to have been given when they are received or, if mailed, ten (10) business days after the date of the mailing; provided that such writing is sent in the mail by registered or certified mail, postage prepaid, return receipt requested, and if sent to the Debtor, is addressed to the Debtor as follows:

Action Motors Corporation, Debtor
c/o James M. Nugent of Harlow, Adams & Friedman, P.C.
300 Bic Drive, Milford, CT 06461, fax: 203-878-9568 ; jmn@quidproquo.com

All notices and requests to holders of Claims and Interests shall be sent to them at their last known addresses. The Debtor or the holder of any Claim or Interest may designate in writing any other address for purposes of this paragraph, which designation shall be effective upon actual receipt by the Debtor as stated above. Notices sent by hand-delivery or by facsimile transmission (telefax) shall be deemed to have been given and received on the next succeeding day, so long as it is during the recipient's regular business hours; otherwise, such notices shall be deemed given and received as to the next succeeding Business Day.

Section 15.6 **Dissolution of committee.** At the time of confirmation of any plan, any committee formed by or in this Chap. 11 case or proceeding shall be permanently

20

dissolved.

Section 15.7 **Post confirmation professional services.** Any such services provided to the debtor post-confirmation shall be payable by the debtor without application to, review by or allowance by this Court.

Section 15.8 **Modification and Revocation of the Plan.**

(a) **Amendments.** Subject to the restrictions on modifications set forth in § 1127 of the Bankruptcy Code and the consent of the Official Creditors' Committee, the Debtor reserves the right to alter, modify or amend the Plan before its substantial consummation.

Section 15.9 **Successors and Assigns.** The rights and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

Section 15.10 **Headings, Exhibits and Schedules.** The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions or interpretations of this Plan.

21

Section 15.11 **Governing Law.** Except to the extent that the Bankruptcy Code

is applicable, the rights and obligations arising under this Plan shall be governed by and

construed and enforced in accordance with the laws of the State of Connecticut.


Dated:

                    The Debtor,

                    By_____
                    James M. Nugent ct: 08822
                    Harlow, Adams & Friedman, P.C.
                    300 Blc Drive Milford, CT 06461


                    Action Motors Corporation

                    By:_____
                    Michael Bernstein, its   President