## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: | : | Case No.: 09-51891 (ahws) |
| | : | |
| Action Motors Corporation | : | Chapter 11 |
| | : | |
| Debtor | : | May 25, 2010 |

## *SECOND MODIFIED SECOND AMENDED*
## *PLAN OF REORGANIZATION*

**SUBMITTED BY:**
*James M. Nugent, Attorney for*
*ACTION MOTORS CORPORATION, DEBTOR*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| In Re: | : | Case No.: 09-51891 (ahws) |
|---|---|---|
| | : | |
| Action Motors Corporation | : | Chapter 11 |
| | : | |
| Debtor | : | May 25, 2010 |

## SECOND MODIFIED SECOND AMENDED
## PLAN OF REORGANIZATION

Action Motors Corporation, as debtor and debtor-in-possession (the "Debtor"),

hereby proposes this Second Amended Plan of Reorganization ("Plan") pursuant to the

provisions of Chapter 11 of the United States Bankruptcy Code, 11 U.S.A. §§ 101 et.

seq.

## ARTICLE I

## DEFINITIONS

As used in this Plan, and unless expressly provided otherwise herein, the

following capitalized terms will have the respective meanings set forth below (such

meanings to be equally applicable to the singular and plural forms of the terms defined

and to masculine, feminine and neuter genders). Capitalized terms used herein, but

not defined below, shall have the meanings ascribed to them in the Bankruptcy Code,

the Bankruptcy Rules or the Exhibits to this Plan.

1.1 **"Administrative Claim"** shall mean any cost or expense of administration in

connection with the Reorganization Case entitled to priority in accordance with

provisions of sections 503(b) and 507(a)(1) and (2) of the Bankruptcy Code, including,

without limitation, (a) any actual, necessary costs and expenses of preserving the

1

Estate and of operating the business of the Debtor (other than such Claims or portions thereof which, by their express terms, are not due or payable on or before the Effective Date); (b) all allowances of compensation for legal or other professional services or reimbursement of costs and expenses under section 330 or section 503 of the Bankruptcy Code or as otherwise allowed by the Bankruptcy Court; and © any fees or charges assessed against the Estate under section 1930 of title 28, United States Code.

1.2 **"Allowed"** shall mean (a) with respect to a Claim: (I) any Claim which has been scheduled by the Debtor as liquidated and not disputed or contingent, or proof of which was filed with the Bankruptcy Court on or before the date designated by the Bankruptcy Court as the last date for filing such proof of claim, and in either case, as to which Claim no objection to the allowance thereof has been interposed within the period of limitation fixed by the Bankruptcy Rules or the Bankruptcy Court; or (ii) a Claim that has been allowed (and only to the extent allowed) by Final Order; and (b) with respect to an interest, every allowed Interest.

1.3 **"Anniversary Date"** shall mean each succeeding date that is one calendar year first after the Effective Date, and thereafter, after the immediate prior Anniversary Date.

1.4 **"Bankruptcy Code"** shall mean Title 11 of the United States Code, 11 U.S.A. §§ 101 et seq., as now in effect or hereafter amended or supplemented.

1.5 **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Connecticut, having jurisdiction over Debtor's Chapter 11 Case.

2

1.6 **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as now in effect or hereafter amended or supplemented.

1.7 **"Business Day"** shall mean any day other than a Saturday, Sunday or other day entitled "legal holiday" as that term is defined in Bankruptcy Rules.

1.8 **"Cash"** shall mean legal tender of the United States of America.

1.9 **"Claim"** shall mean a "claim" as defined in section 101(5) of the Bankruptcy Code, against the Debtor, or portion of such Claim.

1.10 **"Claimant"** means the holder of a Claim.

1.11 **"Cash Collateral Orders"** means any order entered by the Bankruptcy Court in this case pursuant to Bankruptcy Code § 363.

1.12 **"Class"** shall mean a category or group of holders of Claims or Interests, as classified and described in Article IV of this Plan.

1.13 **"Confirmation"** shall mean entry of the Confirmation Order.

1.14 **"Confirmation Date"** shall mean the date on which the Bankruptcy Court enters the Confirmation Order.

1.15 **Confirmation Order"** shall mean the order of the Bankruptcy Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

1.16 **"Creditor"** shall mean a "creditor", as defined in § 101(1) of the Bankruptcy Code, of the Debtor.

1.17 **"Debtor"** shall mean **Action Motors Corporation**, debtor and debtor-in-possession in the Reorganization Case.

3

1.18 **"Disputed Claim"** shall mean a Claim (a) which is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) as to which an objection to the allowance thereof was interposed within the period of limitation fixed by the Bankruptcy Rules or the Bankruptcy Court for filing of such objection and, as to which such objection has not been determined by Final Order.

1.19 **"Disclosure Statement"** means the document filed or to be filed pursuant to § 1125 of the Bankruptcy Code and approved by the Bankruptcy Court as containing 'adequate information' as that term is defined by § 1125(a)(1) of the Bankruptcy Code, and any exhibits annexed hereto and any documents delivered in connection therewith, as the same may be amended from time to time by any duly authorized amendment or modification, all of which are hereby incorporated into and made a part of this Plan as if set out herein verbatim.

1.20 **"Distribution Date"** shall mean each annual date on which distributions of Cash are made to the holders of certain Allowed Claims in accordance with this Plan. The Effective Date shall be the first Distribution Date.

1.21 **"Effective Date"** shall mean the date on which the Plan shall be substantially consummated in accordance with the applicable provisions of this Plan, which date , however, shall be no later than 90 days from the date that the confirmation order is signed and entered.

1.22 **"Estate"** shall mean the estate created in the Reorganization Case pursuant to § 541 (a) of the Bankruptcy Code.

1.23 **"Executory Contract"** shall mean every contract and license to which the

4

Debtor is a party which contract, license or lease is subject to assumption or rejection under § 365 of the Bankruptcy Code.

1.24 **"Filing Date"** shall mean **September 23, 2009** the date of commencement of the Reorganization Case.

1.25 **"Final Order"** shall mean an order or judgment, the operation or effect of which, in whole or part, has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification or amendment thereto) (a) the time to appeal or seek review or rehearing has expired and (b) as to which no appeal or petition for review or rehearing that was timely filed, is pending.

1.26 **"General Unsecured Claim"** shall mean any unsecured Claim that is not entitled to priority under the Bankruptcy Code.

1.27 **"Insider"** shall mean as set forth in the Bankruptcy Code.

1.28 **"Interest"** shall mean any equity interest in the Debtor.

1.29 **"Operating Account"** shall mean the account maintained by the Debtor on and after the Effective Date for purposes of depositing all receipts generated from the operation of the Debtor's business.

1.30 **"Other Secured Claim"** shall mean any Claim of a Creditor secured by a valid and duly perfected, non-voidable lien upon or security interest in property of the Estate to the extent of the value, as of the Confirmation Date, of such Creditor's interest in the Estate's interest in such property, as determined by the Bankruptcy Court pursuant to §506 of the Bankruptcy Code or as agreed upon in writing between the Debtor and the holder of such Claim;

5

1.31 **"Person"** shall mean a "person" as defined in § 101(41) of the Bankruptcy Code.

1.32 **"Plan"** shall mean this Plan of Reorganization, as it may be further amended or modified from time to time in accordance with the provisions hereof and of the Bankruptcy Code.

1.33 **"Professional Fees"** shall mean any Claim of a professional retained by order of the Bankruptcy Court in the Reorganization Case, pursuant to §§ 327 and 1103 of the Bankruptcy Code, and to be paid from the Estate for compensation or reimbursement of costs and expenses relating to services incurred prior to and through the Confirmation Date as, when and to the extent approved by Final Order pursuant to § 330, 331 or 503(b) of the Bankruptcy Code.

1.34 **"Reorganization Case"** shall mean the Chapter 11 case of the Debtor pending in the Bankruptcy Court and bearing case number 09-51891.

1.35 **"Action Motors Corporation"** shall mean Debtor.

1.36 **"Tax Claim"** shall mean any Claim, secured or unsecured, of a governmental taxing authority, including a Claim entitled to priority pursuant to § 507(a)(7) of the Bankruptcy Code.

1.37 **"Post Petition Trade Claims"** means Administrative Claims incurred post-petition in the ordinary course of business of the Debtor and on ordinary course business terms unrelated to the administration of the bankruptcy estate (such as trade and vendor claims).

## ARTICLE II

## PROVISIONS FOR PAYMENT OF UNCLASSIFIED CLAIMS

Section 2.1 **Payment of Administrative and Priority Claims.** Each holder of

an Allowed Administrative Priority Claim  shall be paid, in full settlement, release and

discharge of such Allowed Administrative Priority Claim:  (a) in full in Cash on the later

of the Effective Date, the date on which an order allowing such Administrative  Priority

Claim becomes a Final Order, and the date on which such Administrative  Priority Claim

becomes due and payable in the ordinary course of the Debtor's business; or (b)

pursuant to such other terms as may be agreed upon between the Debtor and the

holder of such Allowed Administrative  Priority Claim.

Administrative claims include, but may not be limited to, Harlow, Adams &

Friedman P.C. counsel for the Debtor of approx. $72,000.00; the Conn. DRS with a

claim for sales tax of approximately $30,000.00; approx. $163,000.00 owed to Michael

Bernstein pursuant to a Borrowing Order entered by the Court;   and fees owed to the

office of the U.S. Trustee.  The DRS claim and U.S. Trustee fees will be paid  upon

confirmation to the extent available funds exist to do so and if not, as soon as possible

thereafter as the Plan Administrator collects funds.  The DRS shall be entitled to

interest at 12% per year on this claim.  Upon request by the Plan Administrator the DRS

will advise as to the amount it claims is due.  Other administrative claims may include

professionals retained by the Plan Administrator to assist in  the discharge of his duties

such as accountants , pension consultants or others.  The Plan Administrator shall also

be entitled to payment for his fees or those of his law firm in the exercise of his duties

7

under the Plan.

Section 2.2 **Payment of Priority Unsecured Claims.** The holders of allowed

priority claims under 11 U.S.C. §§507 (a)(8) shall be paid within 5 years of the date of

the entry of the order for relief plus interest pursuant to 28 U.S.C. §1961 (a) in effect on

the effective date of the Plan. However, the DRS priority claims , if any, shall bear

interest at 12% per year. Such payments shall be made on a monthly basis

commencing 30 days from the date that administrative claims are paid in full.

Payment of the priority claim shall not including any penalty portion which shall be

included in the class of general unsecured claims and paid and/or discharged

accordingly.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

For purposes of the Plan, Claims and Interests are classified as hereafter stated.

Section 3.1 **Class 1 Claims.** Class 1 shall consist of the secured claim of

General Electric Commercial Distribution Finance ("GECDF")

Section 3.2 **Class 2 Claims.** Class 2 shall consist of the secured claim of the

Conn. Department of Labor ("DOL").

Section 3.3 **Class 3 Claims.** Class 3 shall consist of the  claims of

general unsecured creditors.

Section 3.4 **Class 4 Claims.** Class 4 shall consist of the allowed interest of

Michael Bernstein.

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Holders of Allowed Claims and Allowed Interests shall receive, in full settlement,
release and discharge and satisfaction of their respective Allowed Claims and Allowed
Interests, the treatment hereinafter specified under the Plan:

### §4.1 Class 1 - Secured Claim - GECDF.
GECDF  remains secured by its lien on the Debtor's collateral. It will be paid the
invoice amount due from the sale of the remaining horse trailers plus accrued interest
pursuant to the parties Agreement for Wholesale Financing until paid in full.  GECDF
has the right in its complete and absolute discretion to repossess the remaining horse
trailers upon written notice to the Debtor or to the Plan Administrator either of whom
shall notify GECDF of the location of its collateral and agree to voluntarily surrender the
inventory collateral to GECDF upon such notice.   In the event it elects to repossess its
collateral , then GECDF shall sell it in a commercially reasonable manner and reduce
the secured claim accordingly.  GECDF's remaining claim, including allowed attorney's
fees and expenses, will be paid as follows:     the sum of $ 14,902.26  shall be paid in
full within 18 weeks of the effective date of confirmation;    also, after the repossession
and liquidation of the three remaining trailers or some other prompt disposition and
payment to GECDF, any remaining deficiency, including allowed attorneys fees and
expenses,  shall be paid in full in 6 (six) equal monthly installments commencing two (2)
weeks after written notice of said deficiency balance is provided.

GECDF will retain its lien until paid in full. It is impaired and may vote on the Plan.
The Plan Administrator or debtor agree that upon reasonable request , they will report
the status of income and expenditures to GECDF, until its full, allowed claim is paid in
full.

### §4.2 Class 2 - Secured Claim - Conn. DOL.
The DOL filed a lien which it claimed was pre-petition. By virtue of a settlement
reached with the Debtor the sum of $9,000.00 was deemed to be secured and paid in
monthly installments. At this time the approximate sum of $ 5,000.00 remains due.

That sum will be paid in full plus interest at 12% per year within 12 months of the
effective date of confirmation in equal quarterly installments starting 60 days after the
effective date, or faster to the extent funds are available to do so. The DOL will retain its
lien until paid in full.  The DOL claim is impaired and it may vote on the Plan.

9

**§4.3 Class 3 - General Unsecured Creditors.**

Each holder of an Allowed Class 3 claim shall receive payments of a value, as of the effective date of the plan, which are not less than what the holder would receive if the debtor's estate were liquidated under Chapter 7. The liquidation value of the Debtor's assets is approx. $ 575,000 - 675,000.00, depending on collectibility and offsets claimed. The Debtor will accumulate all assets available in the estate and, after payment of secured, administrative and priority claims, and after expenses of administration of the Plan, will pay Class 3 creditors with allowed claims, a pro rata share of the remaining funds. Payments will be made on a semi-annual basis commencing on the later of : (a) the first business day after all secured, administrative and priority claims have been paid in full or (b) six (6) months after the effective date. The estate assets to be distributed include note payments due and owing over the next 4 and one-half years and thus all such funds are not immediately collectible. Class 3 creditors are impaired and may vote on the Plan.

**§4.4 Class 4 - Allowed Interests.** Michael Bernstein owns the entire equity interest in the Debtor. That entire interest will be cancelled upon confirmation.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 5.1 **Implementation as of the Confirmation Date.** As of the Confirmation Date, the following shall occur, or be deemed to have occurred, simultaneously in addition to any applicable provision of the code:

(a) All persons shall be permanently restrained and enjoined (I) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any Claim or Interest, against the Debtor, its Estate, or property, (ii) from enforcing, attaching, collecting or recovering by any manner or means, any judgment, award, decree or order against the Debtor, its Estate or property, (iii) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor, its Estate or

10

property, except those liens expressly granted or retained herein, (iv) from asserting

any set-off, right of subrogation or recoupment of any kind against any obligation due

the Debtor, or property of the Debtor and (v) from performing any act, in any manner, in

any place whatsoever, that does not conform to or comply with the provisions of the

Plan; but in no way does the foregoing impair the right of a Creditor as provided for in

Bankruptcy Code § 553.

Section 5.2  **Implementation on the Effective Date.**  As of the Effective Date,

the following shall occur, or be deemed to have occurred, simultaneously:

(a)  All payments to be made under the Plan on the Effective Date by the Debtor,

including certain distributions to be made to the holders of Allowed Claims and payment

of Expenses of Administration shall be made from funds on the Confirmation Date

which, prior to the Confirmation Date, were confirmed by the Debtor as being in Cash

and/or available to the Debtor, if any.

(b)  Pursuant to the provisions of § 1141 (d) of the Bankruptcy Code, all debts of

and interests in the Debtor that arose prior to the Confirmation Date including, without

limitation, all Claims and Interests provided for under the Plan, and any debt of the

Debtor of a kind specified in Sections 502(g), 502(h) or 501(l) of the Bankruptcy Code,

shall be discharged, terminated or cancelled, as the case may be, except as otherwise

provided for in this Plan.

(c)  The Debtor shall continue to own, operate and manage the business

consistent with and in accordance with the terms of this Plan.

(d)  All claims for relief, including, but not limited to, avoidance or recovery

11

actions under §§ 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or

causes of action that the Debtor has or may have as of the Effective Date, shall be

preserved for the debtor.

## ARTICLE VI

## DISTRIBUTION UNDER THE PLAN

Section 6.1 **General.** Distributions of Cash to be made pursuant to this Plan in

respect of Allowed Claims shall be made on and after the Effective Date and upon the

Succeeding Distribution Dates or Anniversary Dates, respectively, or as otherwise

provided for herein, or as may be ordered by the Bankruptcy Court. Holders of

Disputed Claims or Interests shall receive only that payment or distribution of Cash

under the Plan as relates the amount of the Claim that is not disputed, with the balance

of the Claim amount distribution to await Allowance of the Claim pursuant to Final

Order; whereupon such balance payment, with interest, if any, on the unpaid balance of

the Allowed Claim amount, from the Effective Date, shall be made promptly pursuant to

and in accordance with this Plan.

Section 6.2 **Funding of Plan and Feasibility of the Plan.** All payments to be

made on the Effective Date shall be made from the Debtor's account  funded by Cash

generated from the Debtor's continued operations, if any, income and management.

Funding for continued plan payments will be made from  income received from the

collection of Estate assets including: note receivables owed by   Danbury Fair Dodge

LLC in the face amounts of $360,000.00 dated 9/10/09 and $180,000.00 dated 8/18/09

12

both of which are personally guaranteed by Samuel F. DiFeo and Joseph C. DiFeo;

money owed by General Motors ("GM")for the termination of the Debtor's franchise;

other factory credits, warranty payments or open account items owed  by GM or

Chrysler Motors Corp ("CMC"); and all other receivables owed to the Debtor; and from

the auction of the Debtor's remaining assets consisting generally of ; automotive lifts,

inventory, parts, tools and equipment, furniture, paint facilities and various other items

of personalty contained at the leased premises at 74 Newtown Rd., Newtown Ct.  This

auction has been approved by the U.S. Bankruptcy Court and is being conducted in

connection with the liquidation of the Debtor 's assets under this Plan.  The auction

proceeds will be available for distribution after payment of allowed compensation and

expenses to the auctioneer Petrowsky Associates.  The promissory notes have been

paid on time every month when due and the Debtor is in the process of collecting  other

amounts  The Debtor believes that it will be able to perform its obligations under the

plan without further reorganization.

      Section 6.3   Reserves for Expenses.  The Plan Administrator shall be authorized

to create reserves to be used for the payment of necessary expenses such as :

payment of professionals to prepare tax returns , to wind down any retirement plans ,

for bank charges or other action the Administrator deems appropriate.  The Reserve

shall not be available for distribution to creditors until it is finally determined that  is no

longer necessary.

13

## ARTICLE VII

## PROVISIONS FOR RESOLVING DISPUTED AND CONTINGENT CLAIMS

Section 7.1 **Objection Bar Date.** All objections to Claims shall be served and filed within eight (8) months after the Confirmation Date or such later date as the Bankruptcy Court shall fix in the Confirmation Order except that objections to applications for Administrative Claims shall be filed within twenty one (21) days after notice of the date of hearing of Applications for such Administrative Claims.

Section 7.2 **Resolution of Disputed Claims.** As and to the extent Disputed Claims become Allowed Claims, the Debtor shall promptly distribute to the holders of such Allowed Claims the balance of the amount of Cash that such holders would have received had their Claims been Allowed Claims as of the Effective Date .

Section 7.3 **Status of Disputed Claim.** Unless and until a Disputed Claim becomes an Allowed Claim no holder of such Claim shall have any Claim against the Debtor in respect of such Claim.

## ARTICLE VIII

## DISCHARGE, SURRENDER , EXPUNGEMENT AND CANCELLATION OF CLAIM

Section  8.1 Except as otherwise provided in this Plan, Bankruptcy Code § 1141(d) (3)  or in any order of the Bankruptcy Court: (a) the rights afforded and the payments and distributions to be made under this Plan shall be in complete exchange for, and in full and unconditional settlement, satisfaction, discharge and release of, all

14

existing debts and Claims of any kind, nature or description whatsoever against the

Debtor or any of its assets or property and shall effect a full and complete  release and

termination of all liens, security interests or other Claims or encumbrances  upon  the

Debtor's assets and property; and (b) on the Effective Date all existing Claims against

the Debtor shall be, and shall be deemed to be, extinguished, satisfied, discharged and

released in full and all holders of Claims and interests shall be precluded from asserting

against the Debtor or its assets or property any other or further claims based upon any

act or omission, transaction or other activity of any kind or nature that occurred prior to

the Confirmation Date.

Section 8.2    Except  as other wise provided in this Plan or in the Confirmation

Order, the Confirmation Order shall be a judicial determination of the discharge of the

Debtor from any and all debts of the Debtor that arose before the Confirmation Date

and any liability on a Claim that is determined under §502 of the Bankruptcy Code as if

such Claim had arisen before the Confirmation Date, whether or not a proof of claim

based on any such debt or liability is filed under § 501 of the Bankruptcy Code and

whether or not a Claim based on such debt or liability is Allowed under § 502 of the

Bankruptcy Code.  The discharge of the Debtor shall be effective as to each Claim

regardless of whether the Claim is an Allowed Claim or whether the holder thereof

votes to accept the Plan.

8.3    Any and all claims which were listed as Disputed on the Debtor's schedules

and for which a proof of claim was never filed, shall be deemed to be expunged and

disallowed as a matter of law and any such claimant with a disputed claim shall be

permanently barred from receiving any distribution, shall not be allowed to vote on the Plan and shall not have an enforceable claim against any person or entity for any such disputed claim or any portion thereof.

## ARTICLE IX

## EXECUTORY CONTRACTS

Section 9.1 Any and all Executory Contracts which have not been either assumed or rejected under this Plan or by a Final Order prior to or on the Confirmation Date shall, on such date, be deemed rejected pursuant to § 365 of the Bankruptcy Code.

## ARTICLE X

## CRAMDOWN OF NON-ACCEPTING CLASSES

Section 10.1 If an impaired class fails to accept the Plan by the requisite majorities in number and amount as required in § 1126 of the Bankruptcy Code, the "cramdown" provisions of § 1129(b) of the Bankruptcy Code will be invoked by the Debtor and the Debtor will move the Bankruptcy Court to enter the Confirmation Order notwithstanding any such non-acceptance.

Section 10.2 The Debtor reserves the right to modify, amend or supplement the Plan in order to invoke the cramdown provisions of § 1129(b) of the Bankruptcy Code with respect to impaired classes under this Plan.

16

## ARTICLE XI

## CONDITIONS TO CONFIRMATION AND EFFECTIVENESS

Section 11.1 **Conditions to Confirmation.** Confirmation of the Plan is subject to the following terms and conditions: The appointment of James M. Nugent as Plan Administrator pursuant to the terms and conditions of this or any amended Plan of Reorganization unless waived or modified by him.

Section 11.2 **Conditions to Effectiveness.** Notwithstanding any other provision of the plan or the Confirmation Order, unless otherwise modified in writing by the Debtor, the consummation and effectiveness of the Plan are subject to the following terms and conditions:

(a)  the Confirmation Order shall become a Final Order.

## ARTICLE XII

## RETENTION OF JURISDICTION

Section 12.1  The Bankruptcy Court shall retain jurisdiction of the Reorganization Case for, inter alia, the following purposes:

(a)  to determine any and all objections to the allowance of Claims and Interests;

(b)  to determine any and all applications for compensation and reimbursement

17

of expenses and any other fees and expenses authorized to be paid or reimbursed

under the Bankruptcy Code;

(c)  to remedy any defect, cure any omission, or reconcile any inconsistency in

the Plan or the Confirmation Order as may be necessary to carry out the purpose and

intent of the Plan to the extent authorized by the Bankruptcy Code or the Bankruptcy

Rules;

(d)  to determine any and all controversies and disputes arising under or related

to the Plan;

(e)  to construe and enforce any and all provisions of the Plan;

(f)   to determine any and all pending applications for the rejection or assumption

of Executory Contracts, and to hear and determine and, if need be, to liquidate, any and

all Claims arising therefrom;

(g)  to determine any and all applications, adversary proceedings and contested

or litigated matters commenced prior to the Confirmation Date;

(h)  to enter a final order or decree in the Reorganization Case; and

(I)   to determine such other matters as may be provided for in the Confirmation

Order, consistent with the Plan of Reorganization and authorized under the provisions

18

of the Bankruptcy Code and Bankruptcy Rules.

## ARTICLE XIII

## IMPLEMENTATION OF PLAN AND APPOINTMENT OF PLAN ADMINISTRATOR

Section 13.1  The Debtor is obligated to perform the Plan functions of making timely and complete payments under the Plan . Debtor's means for effectuating this Plan shall be accomplished through management and the collection of all of its assets .

Section 13.2   All property of the Debtor's estate shall vest in the Debtor.

Section 13.3  Appointment of Plan Administrator.

James M.Nugent, of Harlow, Adams & Friedman, P.C., 300 Bic Drive, Milford, CT 06460 Debtor's Counsel, is appointed Plan Administrator and shall have the following specific duties:

(a)    Identity.  James M. Nugent, Esq. Of Harlow, Adams & Friedman, P.C., counsel of the Committee, shall be deemed the Plan Administrator for the Debtors as of the Effective Date. The Plan Administrator may engage other professionals and staff of professionals, including, but not limited to those which have been employed by the Debtors or the Committee.  The Plan Administrator is authorized to exercise and perform the rights, powers and duties held by the Debtors or their estates or granted to the Debtors or their estates under this Plan. Certain of the rights and responsibilities of the Plan Administrator are described below.

(b)    Responsibilities of Plan Administrator.  The responsibilities of the Plan

19

Administrator shall include, but not be limited to, (I) calculating and implementing all

distributions provided under this Plan; (ii) commencing, prosecuting or otherwise

resolving Avoidance Actions; (iii) filing and facilitating the prosecution or settlement of

objections to Claims; (iv) liquidating any remaining property of the Debtors, and

providing for the distribution of the net proceeds thereof, in accordance with the

provisions of this Plan; (v) filing all required tax returns, and paying taxes and all other

obligations on behalf of the Debtors' (vi) managing the wind down of the Debtors, and

otherwise administering the Debtors; and (vii) such other responsibilities as may be

vested in the Plan Administrator pursuant to order of the Bankruptcy Court or as may

be necessary and proper to carry out the provisions of this Plan.

(c)    Powers and Authority of Plan Administrator. The powers and authority of

the Plan Administrator shall, without any further Bankruptcy Court approval, include,

without limitation, the following: (I) to invest estate funds, and withdraw estate funds,

make distributions, incur obligations for reasonable and necessary expenses in

liquidating and converting any remaining assets of the Debtors to Cash and pay taxes

and other obligations owed by the Debtors from funds held by the Plan Administrator

and/or available to the Debtors; (ii) to engage Professional Persons to assist the Plan

Administrator with respect to his responsibilities, including, but not limited to, any

professionals employed by the Debtors or the Committee; (iii) to commence Avoidance

Actions and to compromise and settle Claims and Avoidance Actions on behalf of, or

against, the Debtors; (iv) to liquidate any remaining assets, and provide for the

distributions in accordance with the provisions of this Plan; (v) to manage the continued

20

liquidation of the Debtor's assets, and to otherwise administer the Debtors; (vi) to stand

in the shoes of the Debtors and assert attorney client privilege between the Debtors and

their professionals; (vii) to interpret this Plan in the Plan Administrator's reasonable

discretion; and (viii) such other powers and authority as may be vested in or assumed

by the Plan Administrator by the Bankruptcy Court, or as may be necessary and proper

to carry out the provisions of this Plan. Except as expressly set forth herein, the Plan

Administrator, on behalf of the Debtors shall have absolute discretion to pursue, or not

to pursue, any and all Avoidance Actions, as he determines is in the best interests of

the Debtors, and shall have no liability for the outcome of that decision. In connection

with the administration of the Debtors, the Plan Administrator is authorized to perform

any and all acts necessary and desirable to accomplish the purposes of this Plan. The

Plan Administrator shall also have the authority to engage in discussions with the Buyer

regarding, *inter alia*, obtaining a more immediate payment of the Note, perhaps by

discounting the Note to its present value and seeking a lump-sum payment based on

that present value.

(d)    Retention of Professionals.  The Plan Administrator may employ and

compensate Professional Persons, who have been previously retained pursuant to

order of the Bankruptcy Court including counsel, consultants, and financial advisors, as

needed to assist him in fulfilling his obligations under this Plan, and without further

order of the Bankruptcy Court on whatever fee arrangement he deems appropriate but

not to exceed previously approved hourly rates. However, the engagement of any

Professional Persons not previously authorized pursuant to Bankruptcy Court order

21

shall be subject to Bankruptcy Court approval. The Plan Administrator may employ

Professional Persons including, but not limited to, those that were previously employed

by the Debtors or the Committee. The Plan Administrator, in his sole discretion, shall

create reserves for the fees and expenses of such Professional Persons incurred, or to

be incurred, after the Effective Date.

(e)    Compensation. In addition to reimbursement for actual out-of-pocket

expenses incurred by the Plan Administrator, the Plan Administrator shall be entitled to

receive reasonable compensation for services rendered on behalf of the Debtors at his

standard hourly rate of $330, subject to periodic adjustment. The Plan Administrator

shall not be required to file an application for compensation in order to receive the

compensation provided for herein, but while the case is open, the Administrator shall

provide notice of fees to be paid to him and creditors shall have 5 days to file a written

objection thereto.; all objections are permanently waived if not filed within said 5 days

and all fees may then be paid immediately.

(f)    Removal of Plan Administrator. Any Creditor of the Debtor's estate or the

Office of the United States Trustee has standing to seek an order from the Bankruptcy

Court, after notice and a hearing, to remove the Plan Administrator or any successor

Plan Administrator appointed pursuant to the Plan, for cause shown.

(g)    Successor Plan Administrator. In the event the Plan Administrator is

removed, resigns (with thirty (3) days notice to the  the Office of the United States

Trustee) or otherwise ceases to serve as Plan Administrator, then Stephen P. Wright of

22

Harlow, Adams & Friedman PC shall be made Plan Administrator.  Any party in interest

may file a motion for a successor Plan Administrator which shall be served on notice to

all parties who requested notice in the Debtor's cases and subject to a hearing and

Bankruptcy Court approval, upon good cause shown.    Any successor Plan

Administrator shall be subject to the same qualifications and shall have the same rights,

powers, duties and discretion, and otherwise be in the same position, as the originally

named Plan Administrator. Wherever reference is made in this Plan to the Plan

Administrator, the same shall be deemed to refer to the successor Plan Administrator

acting hereunder.

(h)    <u>Termination</u>.  The duties, responsibilities and powers of the Plan

Administrator shall terminate on the Termination Date, as such term is defined below.

(I)    <u>Records</u>.  The Plan Administrator shall maintain good and sufficient books

and records of account relating to the assets of the Debtors' estate, the Cash, the

management thereof, all post-Confirmation transactions undertaken by the Debtor

and/or the Plan Administrator, all expenses incurred by or on behalf of the Plan

Administrator after the Effective Date, and all distributions contemplated or effectuated

under this Plan.

(j)    <u>Final Report</u>.  The Plan Administrator shall file a final report and

accounting with the Bankruptcy Court which includes a reconciliation of all accounts

from the Effective Date, and statements reflecting compliance with his duties and

obligations under the Plan and satisfaction of all obligations and responsibilities under

23

the Plan. Upon approval of the final report by the Bankruptcy Court, the Plan

Administrator shall be discharged ("Termination Date").

      (k)    <u>Exculpation</u>. The Plan Administrator shall not have or incur any liability to

any Person served with a copy of this Plan or otherwise having notice regarding the

filing of the Plan, including, without limitation, the Debtor, for any act taken or omission

made in good faith in connection with or in any way related to, or arising out of, the

Bankruptcy Case or within the "business judgment" of the Plan Administrator except for

gross negligence, willful misconduct, or breach of fiduciary duty as determined by the

Bankruptcy Court.  The Plan Administrator shall have no liability to any Person served

with a copy of this Plan or otherwise having notice regarding the filing of the Plan for

actions taken in good faith under or relating to this Plan except for gross negligence,

willful misconduct, or breach of fiduciary duty as determined by the Bankruptcy Court.

Further, the Plan Administrator shall not have or incur any liability to any Person served

with a copy of this Plan or otherwise having notice regarding the filing of the Plan for

any act or omission in connection with or arising out of their administration of this Plan

or the property to be distributed under this Plan or the operations or activities of the

Debtor, except for gross negligence, willful misconduct, or breach of fiduciary duty as

determined by the Bankruptcy Court.  Without limiting the foregoing, the Plan

Administrator shall not have or incur any liability to any Person entitled to a distribution

under this Plan if insufficient funds are present to pay that Person that which it is

entitled under this Plan.  Notwithstanding anything to the contrary contained herein,

none of the Plan Administrators shall be released or otherwise free from liability on

account of any Avoidance Action held by or belonging to the Estate.

(l)    Avoidance Actions.  Any recoveries from Avoidance Actions are

unencumbered and available for distribution to unsecured Creditors as their priorities

lie. Notwithstanding, unless otherwise ordered by the Bankruptcy Court, the Plan

Administrator, by and through his counsel, shall have the right to prosecute all

Avoidance Actions, which right shall survive Confirmation. The Plan Administrator's

counsel shall prosecute any such Avoidance Actions on a contingency fee basis (that

is, counsel will charge the estate thirty-three percent (33%) of any and all amounts

actually collected plus out-of-pocket costs), with its fees and expenses to be paid out of

any sums recovered.

(m)    Implementation.  This Plan shall be implemented by the taking of actions

and the execution and delivery of all documents, agreements and instruments

reasonably necessary to carry out the purposes and intent of the Plan, in each case as

provided in the Plan or the Confirmation Order. The Debtors, by and through the Plan

Administrator, are empowered and directed, pursuant to Bankruptcy Code § 1142 and

by this Plan, to execute all such documents, agreements and instruments necessary to

effectuate the provisions of this Plan.

(n)    Maintenance of Cash.  All Cash shall be held in bank accounts, deposits

or investments which are in compliance with Section 345 of the Bankruptcy Code.

(o)    Objections to Claims.  Objections to Claims, if any, with the exception of

any Claim to which an objection may be filed under Bankruptcy Code section 502(d) (as

to which Claims an objection need not be filed within the time period set forth

hereinafter), shall be filed with the Bankruptcy Court and served upon each holder of a

Disputed Claim no later than Eight calendar months  following the Effective Date.

Objections to Claims shall be commenced and prosecuted by the Plan Administrator in

his discretion subject to the rights of any other party in interest to object. Except as

otherwise set forth herein, objections which are not filed within such Eight calendar

month period following the Effective Date are barred, precluded and may not be raised.

With respect to any Claim for which no objection is filed within such time, such Claim

shall be deemed an Allowed Claim for the amount specified in a timely filed proof of

Claim with respect to such Claim, or, if no timely filed proof of Claim exists, in the

amount specified in the Schedules, unless the Claim was specified in the Schedules as

being disputed, contingent or unliquidated. If no timely filed proof of Claim exists, and

the Claim was specified in the Schedules as being disputed, contingent or unliquidated,

the Claim shall be barred and no distribution made thereon pursuant to Bankruptcy

Code section 1111(a) and Bankruptcy Rule 3003(c)(2). With respect to any Claim with

respect to which a timely objection (which shall expressly be deemed to include any

application, motion ro complaint seeking subordination of a Claim) is filed (i.e., a

Disputed Claim), no distribution shall be made to the holder of any such Disputed Claim

until the entry of a Final Order or judgment determining the allowed amount of such

Disputed Claim.

## ARTICLE XIV

## DEBTORS REQUEST PURSUANT TO BANKRUPTCY CODE SECTION 1129(B) (1)

Section 14.1   Notwithstanding the provisions of Bankruptcy Code section

510(a), if all of the applicable requirements of Bankruptcy Code section 1129(a), other

than section 1129(a)(8) thereof, are met with respect to the Plan, the Debtor requests

that he Bankruptcy Court, pursuant to section 1129(b)(1), confirm the Plan

notwithstanding the requirements of section 1129(a)(8) if the Plan does not discriminate

unfairly an dis fair and equitable with respect to each class.

## ARTICLE XV

## GENERAL AND ADMINISTRATIVE PROVISIONS

Section 15.1   **Unclaimed Distributions.**   Holders of Allowed Claims which do

not timely submit  their distribution checks  for payment shall be deemed to have

waived their right to such distributions and shall not participate in any distributions

under the Plan pursuant to § 1143 of the Bankruptcy Code.   The proceeds of checks

issued to the holders of such Claims shall be deemed unclaimed property pursuant to §

347 (b) of the Bankruptcy Code at the expiration of six months (6)  from the date the

unpaid distribution check is mailed unless such holder requests payment from the

Debtor in writing within said six (6) month  period.   The funds resulting from such

unclaimed property shall revert to the Debtor and shall be used by the

Debtor in its sole discretion.

Section 15.2   **Manner of Payments Under the Plan.**   At the Debtor's option, any

27

Cash distribution to be made pursuant to the Plan may be made by check or wire

transfer, or as otherwise required by applicable agreements, if any.

Section 15.3 **Payment Dates.** Any payment or distribution required to be made

hereunder on a day other than a Business Day shall be due and payable on the next

succeeding Business Day.

Section 15.4 **Withholding and Reporting Requirements.** In connection with

this Plan and the distributions made hereunder, the Debtor shall comply with all

withholding and reporting requirements imposed by any federal, state and local taxing

authority, and all distributions hereunder shall be subject to any such withholding and

reporting requirements.

Section 15.5 **Notices.** All notices, requests, elections or demands for payments

provided for in this Plan shall be in writing and shall be deemed to have been given

when they are received or, if mailed, ten (10) business days after the date of the

mailing; provided that such writing is sent in the mail by registered or certified mail,

postage prepaid, return receipt requested, and if sent to the Debtor, is addressed to the

Debtor as follows:

Action Motors Corporation, Debtor
c/o James M. Nugent of Harlow, Adams & Friedman, P.C.
300 Bic Drive, Milford, CT 06461
fax: 203-878-9568; jmn@quidproquo.com

All notices and requests to holders of Claims and Interests shall be sent to them

at their last known addresses.  The Debtor or the holder of any Claim or Interest may

28

designate in writing any other address for purposes of this paragraph, which
designation shall be effective upon actual receipt by the Debtor as stated above.
Notices sent by hand-delivery or by facsimile transmission (telefax) shall be deemed to
have been given and received on the next succeeding day, so long as it is during the
recipient's regular business hours; otherwise, such notices shall be deemed given and
received as to the next succeeding Business Day.

Section 15.6 **Dissolution of committee.** At the time of confirmation of any
plan, if a committee has been formed, any committee formed by or in this Chap. 11
case or proceeding shall be permanently dissolved.

Section 15.7 **Post confirmation professional services.** Any such services
provided to the debtor post-confirmation shall be payable by the debtor without
application to, review by or allowance by this Court.

Section 15.8 **Modification and Revocation of the Plan.**

(a) **Amendments.** Subject to the restrictions on modifications set forth in §
1127 of the Bankruptcy Code and the consent of the Official Creditors' Committee, the
Debtor reserves the right to alter, modify or amend the Plan before its substantial
consummation.

Section 15.9 **Successors and Assigns.** The rights and obligations of any
Person named or referred to in this Plan shall be binding upon, and shall inure to the
benefit of, the successors and assigns of such Person.

29

Section 15.10 **Headings, Exhibits and Schedules.** The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions or interpretations of this Plan.

Section 15.11 **Governing Law.** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Connecticut.

Section 15.12 . **Confirmation order and Plan control**. To the extent of any inconsistencies, the Plan provisions shall control the disclosure Statement and the Confirmation order , or other court orders, control the Plan.

Section 15.13. **Severability**. Should any provisions in the Plan be determined to be unenforceable such determination shall not limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

Dated:     May 25, 2010

Action Motors Corporation

By_____

Michael Bernstein, President

The Debtor

By_____
James M. Nugent ct 08822
Harlow, Adams & Friedman, P.C.
300 Bic Drive , Milford, CT 06461

30